**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **LINA TERZIAN, D.O.,**<br><br>                    **Plaintiff,**<br><br>             **v.**<br><br>**MONTCLAIR HOSPITAL, LLC, d/b/a**<br>**HACKENSACK MERIDIAN**<br>**MOUNTAINSIDE MEDICAL CENTER,**<br><br>                    **Defendant.** | **Civil No. 22-4396 (ES) (ESK)**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

This matter comes before the Court upon Plaintiff Lina Terzian, D.O.'s ("Plaintiff")
motion for a preliminary injunction against Defendant Montclair Hospital, LLC, doing business
as Hackensack Meridian Mountainside Medical Center ("Mountainside" or "Defendant") arising
from her termination prior to completing her first year of the medical residency program at
Mountainside.  (D.E. No. 9; D.E. No. 9-16 ("Mov. Br.")).  Having considered the parties'
submissions, the Court decides this matter without oral argument.  *See* Fed. R. Civ. P. 78(b); L.
Civ. R. 78.1(b).  For the reasons set forth below, the Court **DENIES** the motion.

## I.      BACKGROUND

### A.      Factual Background

In July 2021, Plaintiff, a 57-year-old woman, began a family medicine program as a
medical resident at Mountainside.  (D.E. No. 9-1 ("Terzian Decl.") ¶¶ 2, 6–7).  Prior to starting
as a resident, Dr. Kevin Berg, the program's director, and Dr. Preethi George, the program's
associate director, had interviewed her and voted to accept her into the residency program.  (D.E.
No. 11-1 ("Berg Decl.") ¶ 28).  According to Dr. Berg, early in her residency, Plaintiff failed her

first competency exam, failed to complete patient notes, administered an incorrect vaccine, and forgot to order medications for a patient.  (*Id.* ¶¶ 30–41).  Throughout her residency, Plaintiff received mixed performance reviews.  Specifically, from September 2021 to April 2022, Plaintiff received positive feedback from at least six supervising physicians.  (Terzian Decl. ¶¶ 11–18).  During that same time period, Plaintiff also received performance criticism from at least nine supervising physicians, including Dr. Berg and Dr. George.  (Berg Decl. ¶¶ 42–55, 61 & 69–71).  Dr. Berg and Dr. George specifically gave Plaintiff performance evaluation scores that included "poor," "below average," "average," and "above average."  (D.E. No. 9-2, Ex. A to Terzian Decl. at 84–93 & 114–31).  In December 2021, Plaintiff failed her second competency exam.  (Berg Decl. ¶ 48).

Plaintiff alleges that throughout her residency, Dr. Berg and Dr. George "were extremely hostile to [her] and did not appear to want [her] to succeed."  (Terzian Decl. ¶ 7).  She alleges that Dr. Berg and Dr. George often criticized her "lack of knowledge on a topic or difficulty with an aspect of her duties as something that should not be happening at [her] age."  (*Id.* ¶ 23).  She alleges that Dr. Berg "humiliated" and "ridicul[ed]" her in front of other residents and that "Dr. Berg did not treat younger or male residents in this fashion."  (*Id.* ¶ 22).  In addition, Plaintiff alleges that Dr. Berg "inserted language" in her progress report to misrepresent her progress.  (*Id.* ¶¶ 19–21).

On March 7, 2022, Dr. Berg and Dr. George informed Plaintiff by letter that she was being placed on "Remediation Status" until April 28, 2022, in connection with performance issues relating to medical knowledge, systems-based practice, and interpersonal communication skills.  (*Id.* ¶ 24; *see also* D.E. No. 9-7, Ex. F to Terzian Decl.; Berg Decl. ¶¶ 56–58).  Plaintiff alleges that the reasons outlined in the March 7, 2022 letter were "unfair" and based on mistakes

that were "several months old." (Terzian Decl. ¶ 24). Nonetheless, Plaintiff complied with the Remediation Status requirements, which consisted of extra assignments. (*Id.* ¶ 25).

On April 7, 2022, Dr. Berg and Dr. George informed Plaintiff by letter that she was being placed on "Probation Status" in connection with the same performance issues as those outlined in the March 7, 2022 letter. (*Id.* ¶ 26; *see also* D.E. No. 9-9, Ex. H to Terzian Decl.). Plaintiff again alleges that the reasons provided were "unfair." (Terzian Decl. ¶ 26). Nonetheless, Plaintiff complied with the probation plan requirements. (*Id.* ¶ 27). In late April 2022, Plaintiff alleges that a faculty member, Dr. AnnGene Anthony, told Plaintiff she was "'too old' to be in a residency program and should seek other employment." (*Id.* ¶ 28). On May 6, 2022, Plaintiff alleges Dr. Berg and Dr. George "pressured" her to resign; she initially did so and then ultimately rescinded her resignation after retaining counsel. (*Id.* ¶¶ 29–31). On June 7, 2022, Dr. Berg informed Plaintiff by letter that her residency was terminated. (*Id.* ¶ 50; D.E. No. 9-10, Ex. I to Terzian Decl.).

On June 3, 2022, Plaintiff submitted a notice of appeal of her termination based on her disagreement with her evaluations and her belief that Dr. Berg was "biased against" her. (D.E. No. 9-11, Ex. J to Terzian Decl.).[1] Plaintiff was assigned a neutral third-party—Internal Medicine Program Coordinator Jeanette Richardson—to assist her in the appeals process and to accompany Plaintiff to the appeal proceeding. (D.E. No. 11-16 ("Mehta Decl.") ¶¶ 28–31). On June 8, 2022, Plaintiff requested by email that her attorney be present at the appeal proceeding because she believed Dr. Berg was biased against her for being "an older female" which implicated her "civil rights." (D.E. No. 9-12, Ex. K to Terzian Decl.). On June 9, 2022, Dr. Bijal Mehta, who oversees the appeal process, denied Plaintiff's request for her attorney to be

---

[1]     The Court notes that Plaintiff's June 3, 2022 letter containing her notice of appeal predates the June 7, 2022 letter informing Plaintiff of the termination decision. In Plaintiff's June 3, 2022 letter, she states that her attorney had informed her of Defendant's decision to terminate her residency. (D.E. No. 9-11, Ex. J to Terzian Decl.).

present because the June 3, 2022 notice Plaintiff submitted "did not raise a question of civil rights and [Defendant was] aware of no other complaint."  (D.E. No. 9-13, Ex. L to Terzian Decl.).

On June 21, 2022, a 90-minute appeal proceeding took place.  (Terzian Decl. ¶ 36).  Each party presented their case for 45 minutes and neither side was permitted to be present for the other side's presentation or permitted counsel.  (Mehta Decl. ¶ 44).  In accordance with Defendant's appeal policy, Plaintiff was afforded the opportunity to present "any relevant evidence that supports her contention that the adverse action was not based on 'good cause.'" (*Id.* ¶ 18).  Plaintiff argued that she should not be terminated, pointing to her "positive evaluations" from "most of the faculty members" and "Dr. Berg's bias against [her]."  (Terzian Decl. ¶ 36).  She also mentioned Dr. Anthony's comment regarding her age.  (Mehta Decl. ¶ 48). Following the hearing, Dr. Mehta investigated the claim, which Dr. Anthony denied.  (*Id.* ¶¶ 49– 50).  Dr. Mehta was unable to corroborate the statement and concluded that the claim was unsupported.  (*Id.* ¶¶ 51–52).

On June 24, 2022, Defendant's appeals panel affirmed the termination decision.  (Terzian Decl. ¶ 37).  Plaintiff alleges that her termination makes it "extremely difficult" to start another residency program.  (*Id.* ¶ 38).

## B.    Procedural History

Approximately one week following the decision affirming her termination, on July 1, 2022, Plaintiff commenced the present action against Defendant, alleging age discrimination under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq*. ("NJLAD") (Count I), sex discrimination under NJLAD (Count II), and denial of due process (Count III).  (D.E. No. 1 ("Compl.") ¶¶ 57–62).

On July 21, 2022, three weeks after initiating this action, and approximately six weeks following her termination from the residency program, Plaintiff filed a motion that appeared to seek both a temporary restraining order and a preliminary injunction against Defendant.  (D.E. No. 9).  On July 23, 2022, the Court converted Plaintiff's motion to one for a preliminary injunction only.  (D.E. No. 10).  The motion was fully briefed in due course.  (D.E. No. 11 ("Opp."); D.E. No. 12).  Plaintiff seeks damages and a preliminary injunction reinstating her as a medical resident or, alternatively, directing Defendant to provide her with a new hearing in which she can attend the entire proceeding with the assistance of counsel.  (Mov. Br. at 19).

## II.  LEGAL STANDARD

A court has discretion to grant or deny a motion for a preliminary injunction.  *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).  A preliminary injunction is an extraordinary remedy that should be granted only in limited circumstances. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1426–27 (3d Cir. 1994); *see also Falter v. Veterans Admin.*, 632 F. Supp. 196, 201 (D.N.J. 1986) ("There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction.") (quoting 11 Wright & Miller, Federal Practice and Procedure: Civil § 2942 at 369 (1973)).  The primary purpose of a preliminary injunction is the maintenance of the status quo until a decision on the merits of a case is rendered.  *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994).  Where, as here, the movant requests to alter the status quo, that party faces particular scrutiny under a heavy burden.  *See Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980); *see also Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008).

To grant a preliminary injunction, a court considers whether (i) the movant has shown a reasonable likelihood of success on the merits; (ii) the movant will be irreparably injured by the denial of the relief; (iii) the grant of an injunction will result in substantial harm to the nonmoving party; and (iv) granting relief is in the public interest. *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 181 (3d Cir. 1987), *cert. denied*, 484 U.S. 849 (1987). "All four elements must be satisfied in order to grant the injunction." *Flowers v. Wheeler*, No. 18-8315, 2018 WL 4639239, at \*3 (D.N.J. Sept. 27, 2018) (citing *Roberts v. Ferman*, 448 F. App'x 254, 256 (3d Cir. 2011). The first two elements are gateway elements, and only if those are shown does a court need to consider the last two elements. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017); *see also Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 157 (3d Cir. 2002). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 508 (3d Cir. 2005).

## III.   DISCUSSION

### A.   Likelihood of Success on the Merits

To determine whether there is a reasonable likelihood of success on the merits, a court examines whether there is sufficient evidence to satisfy the essential elements of the underlying cause of action. *See Punnett*, 621 F.2d at 582–83. This standard requires "a reasonable probability, [but] not the certainty, of success on the merits." *SK & F. Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980).

#### i.   NJLAD Age and Sex Discrimination Claims (Counts I & II)

Discrimination claims brought under NJLAD, including those based on age and sex, which rely on circumstantial evidence, are analyzed using a burden-shifting framework

6

established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Department of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981). *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 788–89 (3d Cir. 2007). **First**, a plaintiff must establish a prima facie case of discrimination by demonstrating the following: "(1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (sex discrimination); *see also Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300–01 (3d Cir. 2004) (age discrimination). As to the fourth element, the plaintiff must establish "some causal nexus between" his or her membership in a protected class and the adverse employment action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003); *see also Arenas v. L'Oreal USA Prod., Inc.*, 790 F. Supp. 2d 230, 237–38 (D.N.J. 2011), *aff'd*, 461 F. App'x 131 (3d Cir. 2012) (noting that where the plaintiff is not immediately replaced, the fourth element in age discrimination cases is the same as that in sex discrimination cases); *Williams v. Pemberton Twp. Pub. Sch.*, 323 N.J. Super. 490, 502 (N.J. Super. Ct. App. Div. 1999) (same). "A prima facie case also requires that the adverse employment action be done with discriminatory intent[.]" *Tourtellotte*, 636 F. App'x at 843.

**Second**, if the plaintiff establishes a prima facie case, the burden shifts to the defendant-employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 241 (3d Cir. 2007). **Third**, if the defendant-employer meets this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason provided by the defendant-employer is simply a pretext for discrimination. *Id.* To show pretext:

> a plaintiff must submit evidence which: (i) casts doubt on the
> legitimate reason proffered by the employer such that a factfinder
> could reasonably conclude that the reason was a fabrication; or (ii)
> allows the factfinder to infer that discrimination was more likely
> than not a motivating or determinative cause of the employee's
> termination.

*Id.* at 242.  "For example, the plaintiff may show that the employer has previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class."  *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).  In showing pretext in the medical care context, courts have required the plaintiff to "overcome the fact that a physician is ethically obliged to act in the face of what he or she perceives as substandard care that threatens patient safety."  *Chapman v. Lourdes Med. Ctr. of Burlington Cnty.*, No. A-0120-12T1, 2014 WL 4428248, at *10 (N.J. Super. Ct. App. Div. Sept. 10, 2014).  As such, courts have recognized "a moral duty of each physician" to "freely express himself or herself 'openly and without fear of reprisal' on matters implicating a fellow physician's competence and affecting the quality of health care."  *Id.* (quoting *Bainhauer v. Manoukian*, 520 A.2d 1154, 1170 (N.J. Super. Ct. App. Div. 1987)).

At step one of the burden-shifting framework, the parties appear to dispute only whether Plaintiff has established the fourth element of step one—that her termination gives rise to an inference of unlawful discrimination.  Without citation to the record, Plaintiff points to "the circumstances surrounding her treatment in the residency program" as support for this inference.  (Mov. Br. at 14).  According to Plaintiff, "[t]hese include the evidence of the bias of Dr. Berg and Dr. George against Dr. Terzian including their criticism of her in age-related terms and their evaluating her far more negatively than other faculty members had evaluated her."  (*Id.*).  She also points to the declaration of Dr. Linda Famiglio, a physician who is not affiliated with

Defendant, who found that the basis for Plaintiff's termination was "unclear and potentially unfounded." (*Id.* at 14–15; D.E. No. 9-15 ¶ 3). In response, Defendant skips to the third step of the burden-shifting framework, arguing that Plaintiff cannot establish that the basis for her termination was pretextual because the record demonstrates legitimate reasons on which her termination was based. (Opp. at 14–18).

Upon thorough review of the record, the Court construes the following assertions from Plaintiff's declaration as forming the basis of her claim:

- Dr. Anthony told Plaintiff she was "'too old' to be in a residency program and should seek other employment." (Terzian Decl. ¶ 28).
- Dr. Berg and Dr. George often criticized her "lack of knowledge on a topic or difficulty with an aspect of her duties as something that should not be happening at [her] age." (*Id.* ¶ 23).
- Dr. Berg "humiliated" and "ridicul[ed]" her in front of other residents and "did not treat younger or male residents in this fashion." (*Id.* ¶ 22).

These assertions are not sufficient to demonstrate a causal connection between Plaintiff's protected status and Defendant's decision to terminate her residency. To start, regarding Dr. Anthony's alleged statement, Plaintiff does not allege that Dr. Anthony was involved in the decision to terminate her residency. And even if Dr. Anthony was involved in the decision, "[s]tray remarks" made "by decisionmakers unrelated to the decision process are rarely given great weight[.]" *Geltzer v. Virtua W. Jersey Health Sys.*, 804 F. Supp. 2d 241, 247 (D.N.J. 2011) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 767 (3d Cir. 1994)). Additionally, the record suggests that Defendant investigated Plaintiff's report of this comment and concluded that the report was unfounded. (*See* Mehta Decl. ¶¶ 48–52).

As to Plaintiff's assertions that Dr. Berg and Dr. George often criticized her "lack of knowledge" as "something that should not be happening at [her] age" and that Dr. Berg "ridicul[ed]" her in front of other residents and did not do so to younger or male residents

(Terzian Decl. ¶¶ 22–23), such conduct, without more, does not show a causal nexus between her protected status and the decision to terminate her residency.  "The 'central focus' of the prima facie case 'is always whether the employer is treating some people less favorably than others *because of*'" their membership in a protected class.  *Sarullo*, 352 F.3d at 798 (emphasis added) (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)).  Here, Plaintiff does not provide context as to when the conduct noted in her assertions occurred to connect the conduct with the termination decision.  *See Tourtellotte*, 636 F. App'x at 845 ("incidents [that] are not sufficiently linked to [a plaintiff's] termination . . . fail to support the requisite discriminatory intent behind her termination"); *see also  Hyland v. Am. Int'l Grp.*, 360 F. App'x 365, 367–68 (3d Cir. 2010) ("[A] single remark that might reflect the declarant's recognition of an employee's age in a context unrelated to the employee's termination is [in]sufficient evidence to support a prima facie case of age discrimination[.]").

Thus, while such alleged treatment is unfortunate and unprofessional, Plaintiff has not demonstrated that she was terminated *because of* her protected status.  *See Sarullo*, 352 F.3d at 798; *see also Tourtellotte*, 636 F. App'x at 843 ("[C]omments about breastfeeding, her appearance, her need to consult with her husband regarding her schedule and career, and the comparably better evaluations of her male partner" did not demonstrate the discriminatory intent necessary with regard to the adverse employment action); *Torchia v. Cmty. Health Care, Inc.*, No. 12-5607, 2014 WL 4854436, at *2, 5 (D.N.J. Sept. 30, 2014) (making "comments relating to plaintiff's gender and age" and mimicking the plaintiff "in a high pitched, whiny voice," did not demonstrate discriminatory animus because the plaintiff did not "link those actions and

comments to a discriminatory-fueled termination"). Thus, Plaintiff has not met her burden of showing a likelihood of success on a prima facie claim for discrimination.[2]

Because Plaintiff fails to make a prima facie showing of discrimination, the Court need not reach the remaining steps in the burden-shifting framework. *See McDonnell Douglas Corp.*, 411 U.S. at 802. Even if Plaintiff had established a prima facie showing of discrimination, the Court agrees with Defendant that it has met its burden at the second step of the analysis by providing legitimate, nondiscriminatory reasons for the termination, as documented since the beginning of her residency. (*See* Opp. at 16–18). The NJLAD is not to be construed "to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards." N.J.S.A. § 10:5-2.1; *see also D'Alessandro v. City of Newark*, 454 F. App'x. 53, 56 (3d Cir. 2011) (noting a long history of poor performance is a legitimate, nondiscriminatory reason for terminating an employee); *Casseus v. Elizabeth Gen. Med. Ctr.*, 671 A.2d 176, 181 (N.J. Super. Ct. App. Div. 1996) ("[I]t should require no citation to state that an employee's poor performance in discharging his duties is a legitimate nondiscriminatory

---

[2]      The remaining cases on which Plaintiff relies do not lead to a contrary conclusion. (Mov. Br. at 14 (citing *Maresca v. Port. Auth. of NY & NJ*, No. 10-1055, 2012 WL 6728560, at *10 (D.N.J. Dec. 27, 2021) and *Steward v. Altoona First Sav. Bank*, No. 12-0203, 2014 WL 4415605, at *9–11 (W.D. Pa. Sept. 8, 2014))). To start, in both *Maresca* and *Steward*, each court considered motions for summary judgment, and thus the relevant inquiry was whether such motions met the summary judgment standard rather than whether the plaintiff had made the requisite showing for injunctive relief. *See Maresca*, 2012 WL 6728560, at *10 (denying summary judgment in part because of material dispute as to employer Port Authority's intent raised by employee's conflicting performance reviews); *see also Steward*, 2014 WL 4415605, at *9–11 (denying summary judgment based in part because of material dispute as to employer bank's intent with respect to employee's termination). In addition, the evidence which created a dispute as to the employer's intent in both *Maresca* and *Steward* is distinguishable from the evidence presented here. In *Maresca*, the performance reviews at issue were reviews of a Port Authority administrator, rather than reviews of a medical resident implicating her competence and quality of health care. *See* 2012 WL 6728560, at *10. And here, Plaintiff has not shown a causal nexus between her mix of positive and negative evaluations and the decision to terminate her residency on the basis of her protected status. In *Steward*, days prior to the termination decision, the plaintiff inquired as to an open position, and the defendant said "[t]he only applications I got were from old people, and I don't want them." *See* 2014 WL 4415605, at *10. Moreover, the plaintiff in *Steward* had pointed to evidence that suggested the defendant employer's adverse employment decision may have been made in retaliation, such as that the defendant did not order a summary of the plaintiff's evaluations until *after* she had filed an EEOC charge of discrimination and did not review the evaluations until *after* the termination decision was made. *Id.* at *9. Here, Plaintiff points to no such evidence. As such, both *Maresca* and *Steward* are inapposite.

11

reason to fire or demote the employee."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (noting that courts do not serve as a super-personnel department that reexamines a defendant's business decisions).  And Plaintiff has not met her burden at the third step of the analysis, at which she must show, by a preponderance of the evidence, that the reasons were fabricated or that discrimination was more likely than not a motivating cause.  *See Johnson*, 214 F. App'x at 242.  Plaintiff does not present any argument as to how the reasons provided by Defendant were pretextual, nor does the Court construe any basis for such a finding.[3]  Plaintiff's disagreement with her performance reviews, without more, is insufficient to amount to a showing of pretext.  *See Valdes v. Union City Bd. of Educ.*, 186 F. App'x 319, 323 (3d Cir. 2006).  As such, Plaintiff has not demonstrated that Defendant's proffered reasons for her termination were pretextual.

Accordingly, the Court finds that Plaintiff is unable to demonstrate a likelihood of success on the merits of her NJLAD age and sex discrimination claims.

### ii.   Due Process (Count III)

Procedural due process requires "that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for [a] hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Central*

---

[3]      In her declaration, Plaintiff asserts that Dr. Berg "insert[ed] language" in one of her progress reports to misrepresent her progress.  (Terzian Decl. ¶¶ 19–21).  Plaintiff does not raise this assertion in her brief to support any argument regarding pretext.  To the extent that this assertion can be construed to serve as a basis for such an argument, the Court finds Plaintiff's assertion that Dr. Berg misrepresented her progress unavailing as a basis for pretext because the record evidence she cites does not support her assertion.  Plaintiff asserts that Dr. Berg somehow manipulated a January 2022 report and "made it appear that [she] had not achieved Level One" in any category of the report, when a December 2021 report showed that she *had* in fact achieved at least "Level One" in several categories.  (*Id.*).  However, Plaintiff's December 2021 progress report shows that she was evaluated as "Not Yet Completed Level 1" in nineteen categories.  (D.E. No. 9-5, Ex. D to Terzian Decl.).  Plaintiff's January 2022 progress report shows she was evaluated as either "Not Yet Completed Level 1," "at Level 1," or "between Level 1 and Level 2" in the same nineteen categories.  (D.E. No. 9-4, Ex. C to Terzian Decl.).  Neither report is signed by a supervising physician.  Therefore, it is unclear how Dr. Berg misrepresented her progress.  In sum, neither Plaintiff nor the record provide a basis for the Court to find by a preponderance of the evidence that the reasons for her termination were fabricated or that discrimination was more likely than not a motivating cause.

*Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).  "The type of notice and the type of hearing the Due Process Clause requires, however, depends on the context."  *Keles v. Bender*, No. 21-1497, 2022 WL 840311, at *3 (3d Cir. Mar. 18, 2022) (citing *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).  "Residents, unlike licensed physicians, are generally considered students subject to the academic requirements of a residency program."  *Hernandez v. Overlook Hospital*, 692 A.2d 971, 973 (N.J. 1997) (collecting cases).  "And, in academic settings, more informal forms of notice and hearings suffice."  *Keles*, 2022 WL 840311, at *3 (citing *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 89–90 (1978)).

Before a university dismisses a student for *disciplinary* reasons, due process requires that it afford "rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion."  *Id.* (quoting *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).  When, as here, a university dismisses a student for *academic* reasons, "it faces an even lower hurdle; it need only provide 'an 'informal-give-and-take' between the student and the administrative body.'"  *Id.* (quoting *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 50 (3d Cir. 1986).  In the context of medical residency programs, courts recognize that imposing stricter procedural measures could discourage candid reporting of physician incompetence and threaten the health and safety of patients.  *Hernandez*, 692 A.2d at 976.

Plaintiff relies on *Hernandez* to argue that she has demonstrated a reasonable likelihood of success on her due process claim because she was entitled to have an attorney present during her appeal hearing.  (Mov. Br. at 15 (citing *Hernandez*, 692 A.2d at 977)).  In response, Defendant argues that Plaintiff mischaracterizes the holding in *Hernandez*.  (Opp. at 20–22).  The Court agrees with Defendant.  In *Hernandez*, the New Jersey Supreme Court held that "a

13

medical resident does not have the right to counsel at a private academic hearing[.]"  692 A.2d at

971.  The New Jersey Supreme Court noted in dicta:

> There may, however, be situations in which the employer's interest
> in academic freedom is outweighed by other considerations such as
> claims that the termination was motivated by reasons which
> violated the resident's Civil Rights.  In such cases, the right to
> counsel at a resident's termination proceeding would be
> appropriate to vindicate those substantive rights and protect the
> public from discriminatory hiring and termination practices.  *This
> case, however, does not raise such concerns, as plaintiff has failed
> to demonstrate that the dismissal was motivated by bad faith or ill-
> will unrelated to academic performance.*

*Id.* at 977 (emphasis added).  To start, Plaintiff does not cite any case that has applied the

*Hernandez* dicta, in the nearly thirty years since the case was decided, to hold that a medical

resident has the affirmative right to have an attorney present during a termination appeal

proceeding, and the Court has not found any.  Moreover, Plaintiff's June 3, 2022 notice of appeal

of her termination did not mention a civil rights violation, and Dr. Mehta denied her June 8, 2022

email request to have an attorney present for the appeal proceeding for that reason.  (*See* D.E.

Nos. 9-11, 9-12 & 9-13, Exs. J–L to Terzian Decl.).  In fact, Plaintiff alleges that she raised her

civil rights concern only by way of her June 8, 2022 email request to have her attorney present,

after having already submitted notice of her appeal.  (D.E. No. 9-12, Ex. K to Terzian Decl.).

Moreover, *Hernandez* specifically noted that a case in which the plaintiff fails to demonstrate

that the decision was discriminatory does not raise civil rights concerns.  692 A.2d at 977.

Similar to the plaintiff in *Hernandez*, Plaintiff has failed to demonstrate a reasonable likelihood

that the termination decision was discriminatory.  (*See* Section III.A.i., *supra*).  As such,

Plaintiff's reliance on *Hernandez* is unavailing.

Plaintiff further argues that the hearing was unfair because she was denied the

opportunity to question witnesses or hear the arguments against her.  (Mov. Br. at 16).

14

Defendant opposes, arguing that Plaintiff received the procedural protections that she was due. (Opp. at 18–24).  The Court agrees with Defendant.  At the appeals proceeding, each party presented their case for 45 minutes, and *neither* side was permitted to be present for the other side's presentation or permitted to have counsel present.  (Mehta Decl. ¶ 44).  Plaintiff was assigned Richardson as neutral third-party to assist her in the appeals process and to accompany her during the proceeding, though it is unclear based on the record whether Plaintiff utilized Richardson's assistance.  (*Id.* ¶¶ 28–31).  Plaintiff was afforded the opportunity to present "any relevant evidence that support[ed] her contention that the adverse action was not based on 'good cause.'"  (*Id.* ¶ 18).  Plaintiff presented her case and pointed to evidence such as positive evaluations from certain faculty members.  (Terzian Decl. ¶ 36).  She also mentioned Dr. Anthony's comment regarding her age, which was fully investigated following the hearing. (Mehta Decl. ¶¶ 48–52).  Plaintiff does not point the Court to any binding or persuasive authority that shows the procedure here was unfair, and the Court has not found any.[4]

---

[4]     Plaintiff lists a series of cases from outside jurisdictions without explaining how these cases demonstrate that the instant procedure was unfair, and none provides a basis for such a finding.  (*See* Mov. Br. at 16–17).  To start, in *Grudzinski v. Med. Coll. of Ohio*, the reviewing court affirmed the trial court's decision to grant a preliminary injunction against the defendant residency program because the appeal proceedings were considered a "sham" where the resident evaluation committee met *after* the appeal proceeding and discussed information that had not been presented to the plaintiff prior to the hearing.  *See* No. 00-1098, 2000 WL 376401, at *7–8 (Ohio Ct. App. Apr. 12, 2000).  The committee then relied on such information to form the basis of her permanent suspension.  *Id.* Here, the facts are distinguishable from those in *Grudzinski* because Plaintiff alleges she had access to the information which formed the basis of her termination *before* the appeal proceeding.

        The remaining cases on which Plaintiff relies are in the context of a plaintiff accused of sexual misconduct at a university.  The Third Circuit has recognized that such cases are distinct from those based on a plaintiff's academic performance, *see, e.g., Mauriello*, 781 F.2d at 50, and the cases cited by Plaintiff actually support that distinction.  To start, Plaintiff cites *Doe v. Univ. of Cincinnati*, in which the Sixth Circuit held that the right to cross-examine adverse witnesses might apply to certain university disciplinary proceedings.  *See* 872 F.3d 393, 398, 400–401 (6th Cir. 2017).  There, the Sixth Circuit recognized that due process varies based on the circumstances of each case, and noted that proceedings for disciplinary misconduct require a more searching inquiry as opposed to those based on academic performance.  *See id.* (affirming preliminary injunction against defendant university where both parties' competing accounts around the plaintiff's alleged sexual misconduct lacked corroborative evidence and thus the cased hinged on credibility, but the plaintiff was not afforded an opportunity for cross-examination); *see also Roe v. Adams-Gaston*, No. 17-945, 2018 WL 5306768, at *9–10, 12 (S.D. Ohio Apr. 17, 2018) (finding defendants likely violated the plaintiff's due process rights under *Univ. of Cincinatti* by failing to allow for cross-examination where sexual misconduct case similarly hinged on credibility); *Doe v. Univ. of Notre Dame*, No. 17-298, 2017 WL

Accordingly, the Court finds that Plaintiff has not demonstrated that she is likely to succeed on the merits of her due process claim.

### B.     Irreparable Harm

Irreparable harm "is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484–85 (3d Cir. 2000) (citation omitted).  The harm must be "likely" to occur "in the absence of an injunction." *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 n.11 (3d Cir. 2014) (emphasis omitted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  "Affirmative relief that alters, rather than maintains, the status quo may also be granted, but 'the burden on the moving party is particularly heavy.'"  *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 932 (D.N.J. 2019) (quoting *Am. Fin. Res., Inc. v. Nationstar Mortgage, LLC*, No. 14-7555, 2016 WL 8201959, at *2 (D.N.J. Apr. 29, 2016)).

Because Plaintiff has failed to demonstrate a likelihood of success on the merits of her claims, the Court need not reach the element of irreparable harm.  *See, e.g.*, *Reilly*, 858 F.3d at 179; *see also Flowers*, 2018 WL 4639239, at *3; *Bello v. Edgewater Park Sewerage Auth.*, No. 15-6768, 2016 WL 5745107, at *2 (D.N.J. Sept. 30, 2016) (denying application for a preliminary injunction because plaintiff failed to demonstrate a likelihood of success on the merits).  Nonetheless, the Court briefly addresses the parties' positions.

---

1836939, at *8 (N.D. Ind. May 8, 2017) (noting that courts are not generally competent to hear claims on academic matters as opposed to misconduct), *vacated*, No. 17-298, 2017 WL 7661416 (N.D. Ind. Dec. 27, 2017); *Doe v. Weill Cornell Med. Coll. of Cornell Univ.*, No. 16-3531, 2016 WL 5369613, at *1–2 (S.D.N.Y. June 8, 2016) (briefly noting the court's earlier decision that certain evidence—without noting what that evidence was—shows the plaintiff was denied due process during his Title IX investigation).  Here, Plaintiff does not present any argument as to why the Court should apply the due process afforded to those accused of sexual misconduct to a proceeding based on academic performance, let alone exactly what the extent of such process would include, nor does the Court construe any basis for doing so.  As such, the remaining cases on which Plaintiff relies are inapposite.

To show irreparable harm, Plaintiff argues that she will lose the skills she has gained thus far and the opportunity to practice medicine in the absence of injunctive relief.  (Mov. Br. at 12).  Without providing analysis, Plaintiff cites to *Ramsay v. Nat'l Bd. of Med. Exam'rs*, 968 F.3d 251, 262–63 (3d Cir. 2020) to support her position.  (Mov. Br. at 12–13).  In *Ramsay*, the Third Circuit affirmed the district court's grant of a preliminary injunction, requiring the defendant board of examiners to provide the plaintiff, a medical student, with testing accommodations for certain disabilities under the Americans with Disabilities Act ("ADA").  968 F.3d at 253–54.  The Third Circuit reasoned that without an accommodation, the plaintiff would likely continue to fail her exams and be forced to leave medical school, which could not later "be redressed by legal or an equitable remedy."  *Id.* at 262 (quoting *Acierno*, 40 F.3d at 653).[5]

In response, Defendant does not address the Third Circuit's decision in *Ramsay*, but cites the well-settled line of cases in the employment context holding that discharge from employment and the injuries that may flow therefrom—including difficulty finding future employment—do not constitute irreparable harm.  (*See* Opp. at 25–27); *Sampson v. Murray*, 415 U.S. 61, 91–92, 92 n.68 (1974) ("difficulties in immediately obtaining other employment . . . will not support a finding of irreparable injury, however severely they may affect a particular individual.").  As Defendant points out (Opp. at 25), the Seventh Circuit has held that "physicians are awarded no special treatment under *Sampson* even when . . . they assert that termination will cause a 'deterioration in skills.'"  *Bedrossian v. Nw. Mem'l Hosp.*, 409 F.3d 840, 846 (7th Cir. 2005) (holding that the district court did not abuse its discretion in finding that discharged physician's

---

[5]    The Court notes that *Ramsay* is distinguishable from the instant case because the Third Circuit based its decision in part on circumstances that are absent here.  Specifically, the Third Circuit noted that there was no damages remedy available under the ADA, and, since the defendant was the board of examiners rather than the university, the defendant would have had no authority to reinstate the plaintiff if the university removed her from the program for continuing to fail her exams.  *Ramsay*, 968 F.3d at 262.  In addition, the injunctive relief sought in *Ramsay* was testing accommodations for a medical student, as opposed to reinstatement of a medical resident following termination from the program.  *See id.* at 253–54.

loss of income, damaged reputation, and inability to find another job do not constitute irreparable harm); *see also Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) ("Since reinstatement and money damages could make [public employees] whole for any loss suffered during this period, their injury is plainly reparable . . . .").

Therefore, the harms on which Plaintiff bases her claim for irreparable injury—loss of job skills and opportunity (Mov. Br. at 12)—are injuries generally considered insufficient to establish irreparable harm in the employment context. *See, e.g.*, *Sampson*, 415 U.S. at 91–92. While *Ramsay* and other district court cases cited by Plaintiff have recognized loss of opportunity to be at least relevant to irreparable harm, those cases are distinguishable in that the plaintiff was a student rather than an employed medical resident. (*See* Mov. Br. at 12–13 (citing *See Doe v. Pa. State Univ.*, 276 F. Supp. 3d 300, 314–15 (M.D. Pa. 2017) (finding irreparable harm where the plaintiff, accused of sexual misconduct at a university, would face up to a six-year suspension, difficulty in enrolling in another pre-med program, and the need to explain the gap in his education for the remainder of his professional life) and *Doe v. Rensselaer Polytechnic Inst.*, No. 20-1185, 2020 WL 6118492, at *13 (N.D.N.Y. Oct. 16, 2020) (finding irreparable harm where the plaintiff, also accused of sexual misconduct at a university, would not be "secure in his belief that his future will be decided fairly" until his claim for sex discrimination was decided on the merits))). The only decision on which Plaintiff relies that involved a medical resident is nonbinding. (*See id.* at 13 (citing *Fenje v. Feld*, No. 01-9684, 2002 WL 1160158, at *8 (N.D. Ill. May 29, 2002) (finding plaintiff would suffer irreparable harm absent reinstatement in medical residency program because the recertification process "would require a significant investment of time and money"))).

Plaintiff does not provide any analysis as to how the Court should resolve these issues, including how *Sampson* and its progeny or *Ramsay* should apply.  In the absence of clear guidance from the Third Circuit, the Court declines to reach the issue.  And, as previously noted, even if Plaintiff were to demonstrate irreparable harm, she has not established a necessary element for injunctive relief—a likelihood of success on the merits of her NJLAD or due process claims.  Therefore, the Court does not decide whether Plaintiff has demonstrated irreparable harm.

### C.      Substantial Harm to the Nonmoving Party & Public Interest

Because Plaintiff fails to demonstrate a likelihood of success on the merits of her NJLAD and due process claims, the final two factors alone cannot serve as the basis for preliminary injunctive relief.  *See, e.g.*, *Flowers*, 2018 WL 4639239, at *3; *Reilly*, 858 F.3d at 179.  The Court briefly notes that neither factor weighs in favor of an injunction here.

***Substantial harm to the nonmoving party.***  As discussed above, Defendant demonstrated legitimate reasons for Plaintiff's termination based on her academic performance.  As such, requiring either her reinstatement or another hearing would present an unnecessary hardship on Defendant.  *See Peck v. Montefiore Med. Ctr.*, 987 F. Supp. 2d 405, 414 (S.D.N.Y. 2013) ("Assuming that Peck's performance is substandard and that her presence on the hospital's staff is deleterious, it is self-evident that forcing the hospital to retain her until she may complete her residency would work a hardship on the hospital.").

***Public interest.***  The Court recognizes that prevention of discriminatory hiring and firing practices is in the public interest, as is maintenance of fair process in medical education.  However, in light of Plaintiff's failure to demonstrate a likelihood of success on the merits of her discrimination and due process claims, an injunction in this case would not further these

interests.  The Court further recognizes that "[i]f academic termination hearings are transformed into legal proceedings that involve legal procedures," then "doctors would no longer be acting as academics reviewing medical decisions, but rather as judges" and "the integrity of the program and the public interest is at stake."  *Hernandez*, 692 A.2d at 976.  As such, an injunction in this case would not serve the public interest.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion for a preliminary injunction is **DENIED**. An appropriate Order follows.

**Dated:** March 10, 2023

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**